UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                     :

DAEBO INTERNATIONAL SHIPPING CO., LTD.,    :

                                  Plaintiff,            :              12 Civ. 4750 (PAE)

                          -v-                      :              <u>OPINION & ORDER</u>

AMERICAS BULK TRANSPORT (BVI) LTD.,    :

                                  Defendant.    :

------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

       This case presents what typically is a straightforward proceeding—a petition to confirm a foreign arbitral award—in an unusual posture. The plaintiff, Daebo International Shipping Co., Ltd. ("Daebo International"), seeks to confirm an arbitration award that was rendered in London in favor of a now-defunct entity, Daebo Shipping Co. Ltd. ("Daebo Shipping"). Defendant Americas Bulk Transport (BVI) Ltd. ("ABT"), against whom the arbitral award was rendered, moves for summary judgment dismissing the Second Amended Complaint. Daebo International cross-moves for confirmation and enforcement of the award. What Daebo International really seeks, however, is a modification of the award to name it as the beneficiary of the award in favor of Daebo Shipping—relief that Daebo International has already sought from the arbitral panel and been denied. Although Daebo International may well be entitled to the relief it seeks, it has chosen the wrong forum. This Court, sitting outside the seat of arbitration, lacks the power to modify the award as requested; Daebo International's petition is properly brought in an English court. Accordingly, ABT's motion is granted, and Daebo International's motion is denied.

**I.      Background**[1]

Pursuant to a charter party dated January 15, 2008, Daebo Shipping, a Korean company, chartered the M/V Nicole to ABT, a company organized under the laws of Liberia. Gutowski Decl. Ex. A. A dispute arose between the parties, wherein Daebo Shipping asserted a claim for $306,234 against ABT, and ABT asserted a counter-claim for $729,819 against Daebo Shipping. Award at 2. As agreed in the charter, the parties submitted their dispute to arbitration in London. *Id.* On March 13, 2012, the London arbitral panel issued its award (the "Award"), granting Daebo Shipping's claim for $306,234, plus interest and costs, and denying ABT's counter-claim. *Id.* at 3.

On January 5, 2010—after the commencement of arbitration but before the panel's Award was issued—Daebo Shipping merged with another Korean company, Daebo International, and therefore ceased to exist as a corporate entity under Korean law. Pl. 56.1 ¶ 8; Def. 56.1 ¶ 8; First Kang Decl. ¶¶ 10–16; Second Kwon Decl. ¶ 5; Dkt. 21-2 (Korean incorporation records). However, Daebo International never notified the arbitrators of the merger during the pendency of the arbitration. Pl. 56.1 ¶ 9; Def. 56.1 ¶ 9; Modification Ruling ¶ 4. On March 28, 2012, two weeks after the Award was issued, counsel for Daebo International

---

[1] The Court's account of the facts is derived from the parties' submissions in support of and in opposition to the instant motions, including the parties' respective Local Rule 56.1 Statements (Dkt. 30 ("Def. 56.1"), 37 ("Pl. 56.1"), & 43 ("Def. Reply 56.1")); the Declaration of Peter J. Gutowski in Support of ABT's Motion for Summary Judgment (Dkt. 31) ("Gutowski Decl."), and the exhibits attached thereto, including Ex. A (the charter), Ex. B (the "Award"), and Ex. C (the "Modification Ruling"); the Declaration of Thomas L. Tisdale in Support of Daebo International's Cross-Motion for Summary Judgment (Dkt. 38), and the exhibits attached thereto; and competing declarations by foreign attorneys with regard to issues of foreign law, including: two declarations by Jong Ku Kang in support of ABT (Dkt. 31-2 ("First Kang Decl.") & 45 ("Second Kang Decl.")); three declarations by Tae Il Kwon in support of Daebo International (Dkt. 38-1 ("First Kwon Decl."), 39 ("Second Kwon Decl."), & 48 ("Third Kwon Decl.")); a declaration by Andrew Wright in support of ABT (Dkt. 44) ("Wright Decl."); a declaration by John McVicar McCaskill (Dkt. 49) ("McCaskill Decl.") in support of Daebo International; and a declaration by Benjamin Coffer (Dkt. 50) ("Coffer Decl.") in support of Daebo International.

2

notified the arbitral panel of the change in corporate status and asked the panel to either "correct" the Award so as to make it in favor of Daebo International, rather than Daebo Shipping, or to issue a supplementary award stating that the existing award is enforceable by Daebo International.  Modification Ruling ¶¶ 1–2.  In a ruling dated May 2, 2012 (the "Modification Ruling"), the London panel denied Daebo International's requests, finding that it lacked the power to grant the requested relief.  *Id.* ¶¶ 3–5.

On June 18, 2012, Daebo International commenced this case by filing a petition for recognition, confirmation, and enforcement of the Award.  Dkt. 1.  That petition named ABT as the respondent.  The petition made no mention of the Modification Ruling.

On August 10, 2012, before the original petition was served on ABT, an Amended Complaint was filed, this time by Daebo Shipping (rather than Daebo International).  Dkt. 4.  In addition to seeking enforcement of the Award against ABT, the Amended Complaint named six other entities as co-defendants (the "Alter Ego Defendants"), and sought a declaratory judgment that these defendants were the alter egos of ABT and therefore were also liable to satisfy the Award.  Again, the Amended Complaint made no mention of the Modification Ruling.

On September 28, 2012, ABT and the Alter Ego Defendants moved to dismiss the Amended Complaint.  Dkt. 13.  On December 13, 2012, this Court issued an Opinion & Order, finding that Daebo Shipping, as a defunct corporate entity, was an improper plaintiff; the Court granted leave to amend the complaint to name Daebo International as the proper plaintiff.  Dkt. 26 ("Op.").  The Court also dismissed the claims against the Alter Ego Defendants.  Op. 5 (citing *Orion Shipping & Trading Co. v. E. States Petroleum Corp. of Pan., SA*, 312 F.2d 299, 301 (2d

3

Cir. 1963)).[2]

On December 20, 2012, plaintiff filed a Second Amended Complaint, this time identifying itself as "Daebo International Shipping Co., Ltd. f/k/a Daebo Shipping Co., Ltd." Dkt. 27 ("SAC"). For ease of reference, the Court will continue to refer to the plaintiff herein as "Daebo International." On January 24, 2013, ABT filed a motion for summary judgment dismissing the SAC. Dkt. 29–32. On February 28, 2013, Daebo International filed an opposition to that motion and a cross-motion for summary judgment and confirmation of the award. Dkt. 35–39. On April 12, 2013, ABT filed an opposition to Daebo International's motion and reply in further support of its motion. Dkt. 42–45. On April 26, 2013, Daebo International filed a reply. Dkt. 47–50.

## II.   Applicable Legal Standard

Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201–08, empowers federal courts to enforce arbitral awards, such as this one, governed by the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 (the "New York Convention"). *See Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 404 (2d Cir. 2009). When a party seeks confirmation of an arbitral award under the New York Convention, "[t]he court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207; *see Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 90 (2d Cir. 2005). "Article V of the Convention specifies seven exclusive

---

[2] Daebo Shipping had conceded that its claims against the Alter Ego Defendants are improperly joined in this case and had already filed a separate action seeking a declaratory judgment that the Alter Ego Defendants are co-liable for the Award. *See* Op. 5. The Court addresses defendants' motion to dismiss that separate action in an opinion issued today. *See* No. 12 Civ. 7960 (PAE), Dkt. 20.

grounds upon which courts may refuse to recognize an award." *Encyclopaedia Universalis*, 403 F.3d at 90.  "The party opposing enforcement of an arbitral award has the burden to prove that one of the seven defenses under the New York Convention applies." *Telenor*, 584 F.3d at 405 (citation omitted).  "The burden is a heavy one, as the showing required to avoid summary confirmance is high."  *Id.* (citation omitted).

"Given the strong public policy in favor of international arbitration, review of arbitral awards under the New York Convention is 'very limited . . . in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation.'"  *Encyclopaedia Universalis*, 403 F.3d at 90 (quoting *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997) (additional internal citations omitted)); *accord Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997) ("The court's function in confirming or vacating an arbitration award is severely limited." (citation and alteration omitted)).

However, "[a] petition to confirm an arbitral award is 'treated as akin to a motion for summary judgment.'"  *STX Pan Ocean Shipping Co. Ltd. v. Progress Bulk Carriers Ltd.*, No. 12 Civ. 5388 (RJS), 2013 WL 1385017, at *2 (S.D.N.Y. Mar. 14, 2013) (quoting *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006)).  Although the party opposing enforcement bears the burden of proving that one of the seven defenses is applicable, the petitioner retains the burden of establishing certain threshold requirements.  *See, e.g.*, *Sonera Holding B.V. v. Çukurova Holding A.S.*, No. 11 Civ. 8909 (DLC), 2012 WL 3925853, at *4 (S.D.N.Y. Sept. 10, 2012) (petitioner bears the burden of establishing personal jurisdiction); *Compagnie Noga D'Importation et D'Exportation SA v. Russian Fed'n*, No. 00 Civ. 632 (WHP), 2008 WL 3833257, at *4 (S.D.N.Y. Aug. 15, 2008) (even in a summary confirmation proceeding, Article

III of the Constitution requires, at an irreducible minimum, that a plaintiff have standing).  Thus, Daebo International bears the burden of demonstrating that it has some rights in the Award that it seeks to confirm.

### III.   Discussion

An action to confirm an arbitral award is intended to be a "straightforward proceeding[] in which no other claims are to be adjudicated." *National Football League Players Ass'n. v. National Football League Mgmt. Council*, No. 12-0402-cv, 2013 WL 1693951, at *4 (2d Cir. Apr. 19, 2013) (summary order) (quoting *Ottley v. Schwartzberg*, 819 F.2d 373, 377 (2d Cir. 1987)).  That is how this case appeared when first filed:  An entity calling itself "Daebo International Shipping Co. Ltd. (formerly known as Daebo Shipping Co., Ltd.)" filed a petition for confirmation of a foreign arbitral award in its favor.  Dkt. 1.  Perplexingly, after the case lay dormant for two months, the plaintiff changed:  An Amended Complaint was filed by a different entity, calling itself "Daebo Shipping Co., Ltd."  Dkt. 4.  No explanation was given for the change of plaintiff, nor of the relationship between the current and former plaintiffs.

Both the original petition and the Amended Complaint omitted the following facts, now undisputed: (1) during the pendency of the arbitration, Daebo Shipping merged into Daebo International; (2) at no point during the arbitration did Daebo International notify the arbitral panel of the merger;[3] (3) once Daebo Shipping won the Award (and the counter-claim against it was denied), Daebo International notified the panel of the merger and sought to have the Award modified to name it as the recipient; and (4) the panel denied Daebo International's request.

---

[3] Perhaps this was simply an omission, as Daebo International insists.  *See* McCaskill Decl. ¶¶ 4–6.  But given Daebo International's record of playing fast and loose with corporate form in *this* litigation, it is plausible that it made a strategic decision to make the merger known to the panel only after a favorable award was issued (and the counter-claim against Daebo Shipping denied).

Although it does not dispute these facts, Daebo International nonetheless maintains that this is "a very simple proceeding" which has been "muddied by overly-technical and entirely irrelevant" arguments made by ABT. Daebo Br. 2. If the party who won the award, Daebo Shipping, were the petitioner, this would indeed be a simple case, as ABT does not argue that any of the seven applicable defenses under the New York Convention apply.

But this is not such a case, for the simple fact that Daebo International slept on its rights by failing to notify the arbitral panel that Daebo Shipping had merged into Daebo International. And when Daebo International sought to have the panel modify the Award in its favor, the panel declined to do so. Thus, what Daebo International seeks here is not a confirmation of the Award, but rather a modification. In essence, it seeks an appeal of the London panel's refusal to modify the Award to name Daebo International as its recipient. But Daebo International was not a party to the Award, and this Court, sitting outside the seat of arbitration, lacks the authority to modify the Award in this manner. This is not to say that the Award rendered in the name of Daebo Shipping can never be confirmed and enforced, but only that Daebo International must look to a court of primary jurisdiction—here, in England—for the modification it seeks.

**A. Daebo International's Rights in the Award**

The FAA contemplates that "any *party* to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award," 9 U.S.C. § 207 (emphasis added), which naturally suggests that the petitioner seeking enforcement of an arbitral award must have been a party to the award. *See also Telenor*, 584 F.3d at 405 ("upon petition by a *party* to a qualifying arbitral award") (emphasis added); *Encyclopaedia Universalis*, 403 F.3d at 90 ("When a *party* applies to confirm an arbitral award . . .") (emphasis added). However, there are circumstances in which courts may enforce arbitration agreements or awards *against* entities

that were not parties to the agreement.  *See In re Arbitration between Monegasque De Reassurances SAM v. NAK Naftogaz of Ukr.*, 311 F.3d 488, 495 (2d Cir. 2002) (recognizing five theories, based on contract and agency law, for binding non-signatories to arbitration agreements); *accord Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc.*, 23 F.3d 41, 46–47 (2d Cir. 1994); *McAllister Bros., Inc. v. A&S Transp. Co.*, 621 F.2d 519, 524 (2d Cir. 1980).  These cases, however, typically involve a party to the arbitration agreement seeking to enforce an award (or compel arbitration) against *both* a counterparty to the agreement *and* other non-parties alleged also to be liable.  In this case, by contrast, the sole petitioner was not a party to the Award but seeks to confirm it nonetheless.

Daebo International argues that the Court can simply confirm the Award in its favor, by finding that Daebo International is the successor to Daebo Shipping's rights in the Award.  At first blush, this might seem correct.  The parties do not dispute that Daebo Shipping merged into Daebo International in 2010.  And although the Second Circuit has held that courts must avoid complex factual determinations regarding alter ego liability that would unduly complicate and protract confirmation proceedings, *see Orion Shipping & Trading*, 312 F.2d at 301, it has also held that a straightforward decision regarding successor liability is appropriately made in such a proceeding, *see Productos Mercantiles*, 23 F.3d at 43.

*Productos Mercantiles* is distinguishable, however.  In that case the arbitration agreement explicitly provided that any award "shall be binding upon and inure" to the parties and "their successors and assigns."  *Id.*  Thus, the Second Circuit found, the district court needed only to determine whether the non-party was the successor to the losing party in that arbitration.  The

arbitration agreement here does not, evidently, contain such a provision.[4]  Thus, the question here is not only whether Daebo International is the successor of Daebo Shipping, but also whether Daebo International's failure to appear in the ongoing arbitration until after the Award was issued (more than two years after the merger) prevents it from claiming the Award.[5]

Significantly, Daebo International already asked this question of the arbitral panel, and received an unfavorable response.  Daebo International does not give any reason why the panel's decision that it lacked the power to modify the Award or to issue an amended award was in error.  Instead, it simply requests that this Court overrule that decision *sub silentio* by modifying the Award to name Daebo International as the recipient.  But where an arbitrator has been asked to decide an issue, and expressly declines to do so, the district court may not expand the scope of the arbitration award in an enforcement proceeding by reaching the very issue the arbitrator declined to resolve.  *See National Football League Players Ass'n*, 2013 WL 1693951, at *2–4 (where arbitrator expressly declined to address whether contractual provision preempts state law claims, district court was not authorized to resolve the preemption issue in proceeding to enforce the arbitration award); *see also Zeiler v. Deitsch*, 500 F.3d 157, 170 (2d Cir. 2007) ("In the

---

[4] The parties have supplied the Court with a copy of the charter party, but it is largely illegible, *see* Gutowski Decl. Ex. A, and neither party has indicated that any such provision appears in it.

[5] This is, further, a complex legal question that appears to turn on Korean and English law and perhaps the interplay of the two.  To be sure, although the parties' submissions on issues of foreign law were woefully inadequate—consisting primarily of declarations that state the parties' litigation positions in conclusory fashion with few citations to legal authorities in the relevant jurisdictions—the Court nevertheless can, and generally should, determine such issues of foreign law.  *See Curley v. AMR Corp.*, 153 F.3d 5, 13 (2d Cir. 1998).  In this case, however, the legal question presented may also depend on facts which are poorly developed, or not developed at all, in the record before the Court, *e.g.*, whether the merger between the Daebo entities contained any provision regarding assignment of assets and liabilities, and when Daebo International learned of the ongoing arbitration.

context of an arbitration, the judgment to be enforced encompasses the terms of the confirmed arbitration awards and may not enlarge upon those terms.").

Thus, Daebo International is not asking this Court to make a straightforward successor liability determination such as the one at issue in *Productos Mercantiles*. Rather, Daebo International's confirmation petition is essentially a request that this Court effectively overrule the decision of the London panel by modifying the Award in Daebo International's favor. That request is more properly made in an English court, for the reasons that follow.

### B. This Court Lacks the Power to Modify the Award

The Second Circuit has explained that the New York Convention mandates different regimes for the review of arbitral awards depending on the forum in which such review is sought:

> The Convention specifically contemplates that the state in which, or under the law of which, the award is made, will be free to set aside or modify an award in accordance with its domestic arbitral law and its full panoply of express and implied grounds for relief. However, the Convention is equally clear that when an action for enforcement is brought in a foreign state, the state may refuse to enforce the award only on the grounds explicitly set forth in Article V of the Convention.

*Yusuf*, 126 F.3d at 23 (citation omitted). Here, both the Award and the panel's ruling on Daebo International's request to modify the Award were issued in London. Accordingly, primary jurisdiction lies in England, *i.e.*, "the state in which, or under the law of which, the award [wa]s made." This Court, sitting in secondary jurisdiction, *i.e.*, "in a foreign state," lacks the ability to "set aside or modify [the] award," except based on the grounds set forth in the Convention. *Id.*; *see also id.* ("From the plain language and history of the Convention, it is thus apparent that a party may seek to vacate or set aside an award in the state in which, or under the law of which, the award is rendered. Moreover, the language and history of the Convention make it clear that

such a motion is to be governed by domestic law of the rendering state . . . "); *Gulf Petro Trading Co. v. Nigerian Nat'l Petroleum Corp.*, 512 F.3d 742, 747 (5th Cir. 2008) ("[A] United States court sitting in secondary jurisdiction lacks subject matter jurisdiction over claims seeking to vacate, set aside, or modify a foreign arbitral award.").[6]

Moreover, Daebo International's request misperceives the Convention's policy in favor of enforcement of arbitral awards. Although the Convention typically favors enforcement, such is not the case where an award has been set aside by a court of competent authority in the rendering state. *See* New York Convention Article V(1)(e); *Baker Marine (Nig.) Ltd. v. Chevron (Nig.) Ltd.*, 191 F.3d 194, 197 (2d Cir. 1999); *see also TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 937 (D.C. Cir. 2007) ("A judgment whether to recognize or enforce an award that has not been set aside in the State in which it was made is quite different from a judgment whether to disregard the action of a court of competent authority in another State."). Here, Daebo International's request that the panel modify the Award in favor of Daebo Shipping has been denied. Thus, a ruling by this Court that gives Daebo International this relief—relief that it sought before the panel but which was denied—would be akin to recognizing an award that had been set aside by a competent authority in the state in which it was made. It would thus raise similar concerns about forum-shopping. *See Baker Marine*, 191 F.3d at 197 (declining to enforce arbitration award that had been set aside by competent authority in Nigeria, the seat of arbitration); *TermoRio*, 487 F.3d at 936 (declining to enforce arbitration award that had been set aside in Colombia, the seat of arbitration, regardless of whether grounds relied on for nullification would have been valid in United States, and observing that "[f]or us to [enforce an

---

[6] As noted, *supra*, n.5, Daebo International's entitlement to relief turns in part on a question of English law. This, too, makes England a more appropriate forum for Daebo International's request. *Cf. Yusuf*, 126 F.3d at 23 (motion to set aside award is governed by domestic law of the rendering state).

arbitration award that has been vacated in Colombia] would seriously undermine a principal precept of the New York Convention: an arbitration award does not exist to be enforced in other Contracting States if it has been lawfully 'set aside' by a competent authority in the State in which the award was made").

In denying Daebo International's modification request, the arbitral panel noted that Daebo International was free to appeal that ruling, or to seek relief in the course of enforcement proceedings.  Daebo International did not appeal, because, it states, "[t]he costs of appealing what was essentially an 'arbitrators'' jurisdiction point could not be justified when weighed against the possibility of any such appeal succeeding."  McCaskill Decl. ¶ 9(a).  Instead, it sought relief in the course of enforcement proceedings.  But in doing so, Daebo International chose the wrong forum.  This lapse need not prevent it from collecting on the Award:  Daebo International may bring a petition to confirm the award in a court of primary jurisdiction, which is "free to set aside or modify an award in accordance with its domestic arbitral law and its full panoply of express and implied grounds for relief."  *Yusuf*, 126 F.3d at 23; *see also In re Arbitration between Promotora de Navegacion, S.A. & Sea Containers, Ltd.*, 131 F. Supp. 2d 412, 423 (S.D.N.Y. 2000) ("Should [petitioner] wish to pursue this theory of liability further, it may do so in a court of competent jurisdiction.").[7]  That court is in England.  This Court, sitting in secondary jurisdiction, lacks the power to grant the requested relief.

---

[7] Alternatively, Daebo International's expert has opined that it could enforce the Award in a Korean court without any such modification.  *See* Dkt. 38-2 at 4 ("My opinion . . . is Daebo International can enforce an award in the name of Daebo International itself after obtaining the recognition and enforcement judgment from [a] Korean court in the name of Daebo International under Korean law.").  The Court expresses no opinion as to the legal efficacy of that course.

## CONCLUSION

Defendant's motion for summary judgment is granted. Plaintiff's cross-motion for summary judgment is denied, without prejudice to its right to seek relief in a court of primary jurisdiction. The Clerk of Court is directed to terminate the motions pending at docket numbers 29 and 35, and to close this case.

SO ORDERED.

*Paul A. Engelmayer*

PAUL A. ENGELMAYER
United States District Judge

Dated: May 17, 2013
      New York, New York